COURT OF APPEALS OF VIRGINIA

Present:   Judges Humphreys, Felton and Senior Judge Annunziata[*]
Argued at Alexandria, Virginia


ROGER L. SCHOENBERGER

MEMORANDUM OPINION[**] BY
v.        Record No. 0156-04-4            JUDGE WALTER S. FELTON, JR.
                                                JANUARY 11, 2005
COMMONWEALTH OF VIRGINIA


FROM THE CIRCUIT COURT OF THE CITY OF ALEXANDRIA
John E. Kloch, Judge

Teresa E. McGarrity, Assistant Public Defender (Office of the Public
Defender, on briefs), for appellant.

Donald E. Jeffrey, III, Assistant Attorney General (Jerry W. Kilgore,
Attorney General, on brief), for appellee.


On November 18, 2003, Roger L. Schoenberger (appellant) was convicted in a bench trial

of stalking Jessica Downey in violation of Code § 18.2-60.3.  He was sentenced to twelve

months in jail, with twelve months suspended for two years on the condition that he be of good

behavior and that he have no further contact with Ms. Downey.  On appeal, appellant contends

that the Commonwealth failed to prove that his conduct placed the victim in reasonable fear of

bodily injury or sexual assault and that it failed to prove that he had the requisite *mens rea* for

criminal stalking.  We disagree and affirm the conviction.

---

[*] Judge Annunziata participated in the hearing and decision of this case prior to the
effective date of her retirement on December 31, 2004 and thereafter by her designation as a
senior judge pursuant to Code § 17.1-401.

[**] Pursuant to Code § 17.1-413, this opinion is not designated for publication.

As the parties are fully conversant with the record in this case and because this memorandum opinion carries no precedential value, we recite only those facts that are necessary to the disposition of this appeal.[1]

"When a defendant challenges the sufficiency of the evidence on appeal, we must view the evidence and all reasonable inferences fairly deducible therefrom in the light most favorable to the Commonwealth." Ward v. Commonwealth, 264 Va. 648, 654, 570 S.E.2d 827, 831 (2002) (citing Higginbotham v. Commonwealth, 216 Va. 349, 352, 218 S.E.2d 534, 537 (1975)). We will not disturb the conviction unless it is plainly wrong or unsupported by the evidence. Sutphin v. Commonwealth, 1 Va. App. 241, 243, 337 S.E.2d 897, 898 (1985).

Viewed in the light most favorable to the Commonwealth, the evidence establishes that in 2000, appellant was a new employee at a technology company in Pennsylvania and that Ms. Downey was his direct supervisor. Shortly after Ms. Downey conducted appellant's initial thirty-day employment evaluation, giving him excellent marks, appellant's behavior toward her changed significantly. He waited for her as she left work in the evening, made inappropriate remarks of a sexual nature to her, and called her at home to ask her to go out with him. Ms. Downey explained to appellant that his suggestive remarks to her and his telephone call to her home had "crossed the line." She told him that she did not have personal relationships with her coworkers, that their relationship was strictly limited to work, that she was engaged to be married to another man, and that she was not interested in pursuing any relationship with appellant outside of work.

On the day following her admonition to appellant, Ms. Downey submitted a written statement to her supervisors at the company complaining of his conduct and asserted that she

---

[1] The record before us includes, in lieu of a transcript, a written statement of facts, made a part of the record pursuant to Rule 5A:8.

was no longer comfortable working around him. As a result, the company immediately terminated appellant's employment for violating the company's sexual harassment policy. After his discharge, appellant continued to pursue Ms. Downey despite her repeated rebuffs of him. In June 2001, over a year after his firing, he sent her flowers and a rambling nineteen-page letter in which he expressed concern that Ms. Downey might be depressed and even contemplating suicide, and told her not to blame herself if something should happen to him. He also expressed his strong feelings for her, insisted that he would never hurt her, and blamed her supervisors at his former company for using her to "make an example of him." The letter so impacted Ms. Downey that she left her employment in Pennsylvania and moved to Virginia.

On August 7, 2003, appellant went to Ms. Downey's apartment complex in Alexandria, after having paid another person to locate her, and was observed by her looking in the apartment building's windows. When she saw him in the courtyard below her apartment, she feared, in light of his history of unsolicited advances and her efforts to avoid him completely, that he had come to harm her and that he would not give up coming after her. Ms. Downey placed warning posters immediately inside the entrance to her locked apartment building door and also near the residents' mailboxes. The warning posters displayed appellant's photograph, warned that he was stalking her, asked that he not be let into the apartment building, and urged that anyone seeing him call 911 or contact Investigator Santiago, the Alexandria police officer she had contacted after learning that appellant had approached her former landlord in Pennsylvania asking for her new address.

On the following day, appellant returned to Ms. Downey's apartment complex. He ignored the warning posters clearly posted at the inside of the entrance to her locked apartment building, entered her building, and left a package containing an angel and a note imploring her to

call him.  When she discovered the package, Ms. Downey immediately reported her fears to Investigator Santiago.

Appellant contends that the evidence failed to support his conviction of stalking in violation of Code § 18.2-60.3.

Code § 18.2-60.3 provides, in pertinent part:

> A.  Any person, . . . who on more than one occasion engages in conduct directed at another person with the intent to place, or when he knows or reasonably should know that the conduct places that other person in reasonable fear of death, criminal sexual assault, or bodily injury to that other person or to that other person's family or household member is guilty of a Class 1 misdemeanor.
>
> *    *    *    *    *    *    *
>
> C.  A person may be convicted under this section irrespective of the jurisdiction or jurisdictions within the Commonwealth wherein the conduct described in subsection A occurred, if the person engaged in that conduct on at least one occasion in the jurisdiction where the person is tried.  Evidence of any such conduct that occurred outside the Commonwealth may be admissible, if relevant, in any prosecution under this section provided that the prosecution is based upon conduct occurring within the Commonwealth.

In order to convict a person of stalking, the Commonwealth must prove that the accused either intended to cause the victim to be in "reasonable fear of death, criminal sexual assault, or bodily injury" or that he knew or reasonably should have known that his conduct would cause the victim such fear.  Code § 18.2-60.3; see, e.g., Parker v. Commonwealth, 24 Va. App. 681, 685, 485 S.E.2d 150, 152 (1997).

Appellant argues that the Commonwealth failed to establish that he had the requisite *mens rea* to convict him of stalking.  He argues that the evidence shows he lacked any intent to harm Ms. Downey and that he never threatened her with harm or acted violently toward her.

Here, the record contains ample evidence from which a rational fact finder could infer that appellant knew or reasonably should have known that Ms. Downey was placed in reasonable

- 4 -

fear of harm by his continuing conduct toward her. See Code § 18.2-60.3. When Ms. Downey was appellant's supervisor, she told him that she was not interested in having any relationship with him outside of work. She also told him that his remarks and conduct "crossed the line." Appellant was aware that, as a direct result of Ms. Downey's complaints to her supervisors regarding his conduct, his employer terminated his employment for violating the company's sexual harassment policy. Appellant admitted to Investigator Santiago that a former coworker told him that his nineteen-page letter to Ms. Downey upset her so intensely that she left her job and moved from Pennsylvania. Despite these clear and unequivocal warnings to him, and fully aware of her repeated rejection of his advances, he nevertheless sought her out and gained access to her locked apartment building. He located her specific apartment and there left a picture of an angel and implored her to call him. From the evidence, particularly from the photographs showing the location of the posters, the trial court could reasonably infer that appellant saw the warning posters when he gained access to the locked apartment building or as he left the building and that he ignored their plain message of Ms. Downey's fear of him.

Accordingly, we find that evidence abundantly supports the trial court's conclusion that appellant knew or should have known that his conduct created her fear that he would harm her.

Appellant also argues that, in light of the history of the relationship between the parties, his conduct could not be reasonably interpreted as threatening toward Ms. Downey.

The reasonableness of the victim's fear is measured objectively, and may be inferred from conduct that would place an "ordinary, reasonable person in the victim's circumstances in fear for . . . her physical well-being . . . [and] 'does not vary with the particular psychological makeup of the victim.'" Parker, 24 Va. App. at 688, 485 S.E.2d at 153-54 (quoting Woolfolk v. Commonwealth, 18 Va. App. 840, 849, 447 S.E.2d 530, 535 (1994)). "Under this objective standard, the statute provides adequate notice that it proscribes repeated conduct that is either an

express threat of physical harm or would be reasonably interpreted by the victim as a threat of impending physical harm in light of the history of the parties' relationship." Id. The record reflects that appellant clearly engaged in multiple instances of conduct directed toward Ms. Downey, which caused her to be reasonably fearful that he would harm her.

Upon review of the record, the protracted history of the parties' relationship, Ms. Downey's communications of fear of appellant to Investigator Santiago, and her posting of the warning posters, we find credible evidence to support the trial court's conclusion beyond a reasonable doubt that Ms. Downey had reasonable cause to fear that appellant would harm her and that he knew or should have known that his conduct caused her to have that fear.

For the above reasons, we affirm the trial court's conviction of appellant for criminal stalking in violation of Code § 18.2-60.3.

Affirmed.